CITY OF PENDLETON et al,
*Petitioners,*

*v.*

KERNS et al,
*Respondents.*

(No. 81-127, CA A24312)

650 P2d 101

Rudy M. Murgo, City Attorney, Pendleton, argued the cause for petitioner City of Pendleton. With him on the brief was William J. Storie.

William J. Storie, Pendleton, argued the cause for for petitioners Fredrick S. Hill and Mary Ann Hill. With him on the brief was Rudy M. Murgo, Pendleton.

Thomas R. Page, Portland, argued the cause for respondents. With him on the brief were Stephen T. Janik and Stoel, Rives, Boley, Fraser and Wyse, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioners, City of Pendleton (City) and Fredrick S. and Mary Anne Hill, seek judicial review of a decision by the Land Use Board of Appeals (LUBA) that reversed and remanded the City's decision to annex a parcel of land belonging to petitioners Hill to the city. We affirm.

Pendleton City Ordinance No. 3192, adopted on October 20, 1981, annexed approximately 12.36 acres of land owned by petitioners Hill (the Hill property) to the city. The Pendleton City Council adopted as its own the Pendleton Planning Commission's findings of fact and conclusions of law, which had recommended annexation.

Respondents filed and served their notice of intent to appeal with LUBA on November 16, 1981. The notice stated, in relevant part:

"Notice is hereby given that [respondents] intend to appeal that land use decision of [the City] entitled Ordinance No. 3192: An Ordinance Declaring a Certain Described Area Contiguous to the City of Pendleton to be Annexed Thereto, Zoning it R-1 Low Density Residential, Accepting the Written Consent of the Owners in the Area Proposed to be Annexed and Directing the City Recorder to Transmit Certain Documents to the Secretary of State, which became final on October 20, 1981 and which involves the annexation to and rezoning of the land area referred to in the ordinance to the City of Pendleton, State of Oregon."

City filed the required record with LUBA on December 3, 1981. By letter dated December 4, 1981, LUBA advised respondents and petitioners that the petition for review was due 20 days after receipt of the record and that the responsive brief was due 40 days after receipt of the record.

Respondents filed their petition for review on December 21, 1981. They included a copy of the findings of fact, statements of reasons and conclusions of law adopted by City but failed to include a copy of the pertinent ordinance. Instead, respondents inadvertently attached a copy of Ordinance No. 3191, which set the annexation for hearing, instead of Ordinance No. 3192, which effected the annexation itself. The petition for review repeatedly referred to Ordinance No. 3191, but it discussed exclusively

the relevant ordinance, No. 3192, and the issues raised by the annexation. City's responsive brief, filed on January 11, 1982, responded to the annexation issues.

On January 11, 1982, City also filed a motion to dismiss for lack of jurisdiction based on respondents' failure to include a copy of Ordinance No. 3192 in their petition for review. On the same day, respondents filed a motion to amend their petition pursuant to LUBA Rules of Procedure, Section 7(D), to include a copy of the ordinance. On January 12, they also filed an answer to City's motion to dismiss. On January 18, 1982, City filed a response to the answer to the motion to dismiss and also filed an answer to the motion to amend the petition. On January 20, 1982, LUBA simultaneously issued orders granting respondents' motion to amend and denying City's motion to dismiss.

After hearing oral argument, LUBA submitted a proposed opinion and order to LCDC. LUBA's recommendation concluded that City had failed to comply with LCDC's annexation rule, OAR 660-01-315. Specifically, LUBA concluded that petitioner City had failed to find that the Hill property was physically developed or within an area physically developed for urban uses or that the property was clearly and demonstrably needed for an urban use before acknowledgment of the City's comprehensive plan. LCDC approved LUBA's recommendation without change. LUBA issued its final opinion and order on March 18, 1982, within 90 days after the date of filing of the petition for review, as required by Or Law 1979, ch 772, § 4(8). This proceeding followed.

■ Petitioners contend, first, that LUBA erred in denying the motion to dismiss for lack of jurisdiction. They argue that respondents' failure to attach a copy of the "land use decision" to their petition for review deprived LUBA of jurisdiction. A correct reading of Or Laws 1979, ch 772, demonstrates that LUBA has jurisdiction to review this land use decision.

Or Laws 1979, ch 772, § 4(1), as amended by Or Laws 1981, ch 748, § 35, which defines LUBA's jurisdiction, states in relevant part:

"* * * Subject to the provisions of Section 6a, Chapter 772, Oregon Laws 1979, relating to judicial review by the Court of Appeals and except as otherwise provided in section 3 of this 1981 Act [ORS 197.605], the board shall have exclusive jurisdiction to review any land use decision of a local government or special district governing body or a state agency in the manner provided in sections 5 and 6, chapter 772, Oregon Laws 1979."

Respondents properly commenced LUBA's review proceeding. Or Laws 1979, ch 772, § 4(1), as amended by Or Laws 1981, ch 748, § 35, states:

"Review of land use decisions under sections 4 to 6, chapter 772, Oregon Laws 1979, shall be commenced by filing a notice of intent to appeal with the Land Use Board of Appeals."

Or Laws 1979, ch 772, § 4(4) specifies the time and manner of filing a notice of intent to appeal. Respondents filed a timely and proper notice of intent to appeal with LUBA. That notice of intent to appeal correctly identified Ordinance No. 3192 and the annexation as the subject matter of the review proceeding. That filing commenced the review proceeding. LUBA therefore had acquired "jurisdiction" to review the land use decision.[1] *See Bryant v. Clackamas County,* 56 Or App 442, 445, 643 P2d 649 (1982).

■     Petitioners contend next that LUBA erred in granting respondents' motion to amend their petition for review pursuant to OAR 661-10-030(4). LUBA permitted the amendment to include a copy of Ordinance No. 3192. Petitioners do not contend that respondents' motion to amend was improper under LUBA's procedural rules or that LUBA abused its discretion under those rules when it permitted that amendment. Rather, petitioners appear to argue that LUBA lacks authority under its enabling statutes to adopt the procedural rule that it relied on when it permitted the amendment. Petitioners therefore ask this court to invalidate LUBA's procedural rule.

---

[1] The cases cited by petitioners, *Gordon v. City of Beaverton,* 52 Or App 937, 630 P2d 366, *aff'd on other grounds,* 292 Or 228, 637 P2d 125 (1981), and *Hayes v. Yamhill County,* 1 Or LUBA 199 (1980), are therefore distinguishable on their facts from the instant case. In each of those cases, the party seeking review failed to file its petition for review within the 20 days allowed by Or Laws 1979, ch 772, § 4(6). LUBA granted motions to dismiss. Here, respondents filed their petition for review within the time allowed. LUBA properly distinguished *Gordon v. City of Beaverton, supra,* and *Hayes v. Yamhill County, supra,* from this case.

LUBA's enabling statute grants it rule-making authority. Or Laws 1979, ch 772, § 2a(4) states:

> "The board shall adopt rules governing the conduct of review proceedings brought before it under sections 4 to 6 of this 1979 act."

LUBA has adopted rules of procedure for all appeals filed with it. *See* OAR 661-10-000 *et seq.* LUBA stated its purpose in adopting the procedural rules as follows:

> "The procedures established in these rules are intended to provide for the speediest practicable hearing and decision in the review of land use decisions while affording all interested persons reasonable notice and opportunity to participate, reasonable time to prepare and submit their cases, and a full and fair hearing. The procedures established in these rules seek to accomplish these objectives to the maximum extent consistent with the time limitations placed upon the Board in Oregon Laws 1979, Chapter 772. These rules shall be interpreted to effectuate these policies and to promote justice. *Technical violations of these rules which do not affect substantial rights or interests of parties or of the public shall not interfere with the review of a petition.*" OAR 661-10-005; LUBA, Rules of Procedure, Section 7. (Emphasis supplied.)

OAR 661-10-030(1) governs the filing and service of the petition for review. That section states that the petition for review must be filed with the Board and served on the governing body and all intervenors within 20 days after the date the record is received by the Board. Failure to file a petition for review within the time required will result in dismissal of the appeal. LUBA's Rules of Procedure set forth specifications for the petition for review. OAR 661-10-030(2). They require the petition for review to contain a copy of the land use decision of which review is sought, including the written findings of fact, statements of reasons and conclusions of law adopted by the governing body. OAR 661-10-030(3). OAR 661-10-010 defines "land use decision" as "[a] final decision or determination made by a city * * * that concerns the * * * application of statewide planning goals * * *" and "[f]inal decision or determination" as a "decision or determination which has been reduced to writing and which bears the necessary signatures of the governing body." OAR 661-10-030(4) permits amendment of the petition once filed. It states:

"A petition for review which fails to comply with sections (2) or (3) of this rule may, with permission of the Board, be amended. The Board shall determine whether to allow an amended petition for review to be filed in accordance with the provisions in rule 661-10-005."

LUBA's rules do not permit extension of the time for filing the petition.

We find nothing in any of these rules that exceeds LUBA's authority. All of them "govern the conduct" of appeals brought before it. None expands its jurisdiction; none is inconsistent with the statutory language. We therefore reject petitioners' contention that LUBA's rules for amending petitions for review are invalid.

■    Next, petitioners argue that LUBA erred in not setting forth findings of fact and conclusions of law when ruling on petitioners' motion to dismiss and respondents' motion to amend.[2] Petitioners point to the text of the orders as evidence of an absence of findings of fact and conclusions of law. They ask that LUBA's orders be reversed and the petition be dismissed or, in the alternative, that the case be reversed and remanded for further hearings as a result of these alleged deficiencies. Findings under such circumstances are not required, but a review of the record indicates that LUBA did adopt adequate findings of fact and conclusions of law, in any event.

The Supreme Court has held that findings of fact and conclusions of law need take no particular form.

---

[2] Petitioners cite the following cases in support of this assignment of error: *Stevenson v. Morgan,* 17 Or App 428, 522 P2d 1204 (1974); *Hughes v. Employment Division,* 30 Or App 483, 567 P2d 582 (1977). *See also Johnson v. Employment Division,* 56 Or App 454, 642 P2d 329 (1982). *Chapman v. Employment Division,* 32 Or App 127, 573 P2d 755 (1978); *Kokotan v. Employment Division,* 30 Or App 391, 567 P2d 138 (1977); *Vail v. Employment Division of Department of Human Resources,* 30 Or App 365, 567 P2d 129 (1977); *Erickson v. Employment Division,* 29 Or App 893, 565 P2d 1101 (1977); *Aschenbrenner v. Employment Division,* 29 Or App 345, 563 P2d 757 (1977); *Mason v. Employment Division,* 29 Or App 803, 564 P2d 1105 (1977).

As respondents point out, the cases cited by petitioners describe the type of findings that are required of an agency when it conducts *de novo* review of a hearing officer's decision. LUBA does not conduct a *de novo* review. Petitioners have cited no authority requiring detailed findings in an interlocutory procedural order. Neither have petitioners cited any authority for the proposition that a tribunal must include detailed findings in a discretionary order granting a motion to amend.

*Sunnyside Neighborhood v. Clackamas Co. Comm.,* 280 Or 3, 569 P2d 1063 (1977). As the record indicates, the parties submitted memoranda on both motions. Respondents' brief identified the applicable rules and relevant facts. LUBA simultaneously issued orders granting respondents' motion to amend and denying petitioners' motion to dismiss. In its order on the motion to dismiss, LUBA incorporated by reference all but one of the arguments from respondents' answer to the motion to dismiss.[3] Those incorporated arguments justify both LUBA's order denying petitioner's motion to dismiss and its order granting respondents' motion to amend.[4] Had findings been required, LUBA's order would have been sufficient.

Finally, petitioners contend that LUBA erred in ruling that OAR 660-01-315, when applied to the facts of this case prohibited annexation of the area in question until City had an acknowledged comprehensive plan. Petitioners ask this Court to reverse LUBA's final opinion and order, which held that City's findings failed to show that the Hill property was within an area physically developed for urban uses or was clearly and substantially needed for an urban use prior to acknowledgement of City's comprehensive plan.

Our review is governed by Or Laws 1979, ch 772, § 6a, which states, in relevant part:

"* * * * *

"(7) Review of an order issued under sections 4 to 6, chapter 772, Oregon Laws 1979, shall be confined to the record. The court shall not substitute its judgment for that of the board as to any issue of fact.

_____

[3] LUBA's order on the motion to dismiss states:

"This matter is before the Board on Respondent City of Pendleton's Motion to Dismiss for petitioners' alleged failure to perfect their appeal as required by Oregon Laws 1979, ch 772. Respondents' motion is denied for the reasons set forth in Petitioner's Answer to Motion to Dismiss received by this Board on January 12, 1982, with the exclusion of that portion of the response identified as 'Respondents' Motion Not Timely Filed."

[4] LUBA's order on the motion to amend states:

"This matter is before the Board on Petitioner's Motion to Amend its Petition for Review. Said motion is granted."

"(8) The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

"(a) The order to be unlawful in substance or procedure, but error in procedure shall not be cause for reversal or remand unless the court shall find that substantial rights of the petitioner were prejudiced thereby;

"(b) The order to be unconstitutional; or

"(c) The order is not supported by substantial evidence in the whole record.

"(9) If the order of the board is remanded by the Court of Appeals or the Supreme Court, the board shall respond to the court's mandate within 30 days."

■  LUBA's review focused on whether City's findings were adequate under applicable law to support its decision. LUBA summarized the relevant portions of those findings as follows:

*"FACTS*

"Pendleton Ordinance No. 3192 annexes 12.36 acres of land owned by Respondents Hill (hereinafter Hill property) to the City of Pendleton and rezones the property R-1 (Low Density Residential). Pendleton's comprehensive plan has not been acknowledged by LCDC as being in compliance with the statewide goals. The city council, by Ordinance 3192 adopted as its findings of fact and conclusions of law the Pendleton Planning Commission's findings and conclusions.

"The subject property is surrounded by city limits on three sides with two recently annexed parcels, Cory (6 acres) and Mills-Barnett (24 acres) located to the southeast and east. Grandview Heights and NW Ingram-NW Johns Neighborhoods are located on the west and the Livermor's first and second additions on the south of the subject property. To the northeast of the property lies the Wheatland Subdivision consisting of 20 small acreage lots (1 1/2 to 2 acreas in size) which is served by a 12 inch diameter city waterline. As of the date of the decision only one home had been constructed in phase 1 of the Wheatland Development and six of the ten lots in that phase had been sold.

"The record indicates that the Mills-Barnett Addition was annexed by the city on October 2, 1979 and contains

an 85-lot subdivision (Owen Subdivision). The Owen Subdivision had received only preliminary plan approval at the time the contested decision was made. Further, prerequisites to development had not been finalized due in part to this Hill property litigation which has prevented development of access alternatives to the Owens Subdivision. The most direct and logical access to the Mills-Barnett Addition is via an extension of North Main Street. North Main runs by petitioners' property and that fact appears to be the source of most of petitioners' concerns, i.e. increased traffic and use of the street which is presently dead end. The city also has placed a condition on the Mills-Barnett Annexation that building permits cannot be obtained until construction contracts are issued to improve either North Main or Lee Street to city standards so they could serve the property. That condition had not been met when the contested decision was made. Furthermore, the economic climate had dampened any immediate demand for development.

"The city council summarized its beliefs about the Hill property annexation when it stated:

" 'When considering the commitment of the city to allow the extension of a 12-inch waterline along the north side of the Hill property, and the extensive planning effort that has occurred at both the city and county levels to coordinate the development of the Wheatland and Owens Subdivisions and Hill annexation, it is obvious that this request does encourage an orderly growth of the city. The Hill annexation would be an "infilling" of a vacant area that is surrounded by developed, developing, and readily developable properties.' "

OAR 660-01-315 states:
"* * * * *

"For annexation of lands not subject to an acknowledged plan, the requirements of Goal No. 3 (Agricultural Lands) and Goal No. 14 (Urbanization), OAR 660-10-060 shall be considered satisfied *only* if the city or local government boundary commission after notice to the county and an opportunity for it to comment, finds that adequate public facilities and services can be reasonably made available; and

"(a) The lands are physically developed for urban uses or are within an area physically developed for urban uses; or

"(b) The lands are clearly and demonstrably needed for an urban use prior to acknowledgment of the appropriate plan and circumstances exist which make it clear that the lands in question will be within an urban growth boundary when the boundary is adopted in accordance with the goals.

"Lands for which the findings above cannot be made, *shall not* be annexed until acknowledgment of an urban growth boundary by LCDC as part of the appropriate comprehensive plan. * * *" (Emphasis supplied.)

LUBA correctly summarized the rule as follows:

"The annexation rule requires the city to find, based on substantial evidence that, (1) adequate public facilities and services can be reasonably made available to the Hill property; *and* (2) the Hill property was either physically developed for urban uses or is within an area physically developed for urban uses; *or* (3) the Hill property was clearly and demonstrably needed for an urban use prior to acknowledgment of the city's comprehensive plan and it is clear that the Hill property will be within an urban growth boundary when the boundary is adopted in accordance with the goals." (Emphasis in original.)

Applying the rule to the facts, LUBA concluded first that petitioners had failed to show that the Hill property is either physically developed or within an area physically developed for urban uses. LUBA pointed to City's acknowledgment that "the subject property is not developed at this time * * *." As to whether the property was within a physically developed area, LUBA stated:

"The mere fact that the Hill property is surrounded by city limits does not mean that it is within an area physically developed for urban uses. The record is clear that a majority of the property surrounding the Hill land consists of undeveloped subdivisions some of which have reached, at best, the preliminary plat stage."

■ ■ Petitioners do not challenge LCDC's authority to promulgate rules such as OAR 660-01-315. *See* ORS 197.040(b) and (c). Instead, they seem to challenge LUBA's application of the rule to the facts as found by City. LUBA analyzed the requirement that the property be "within an area developed for urban use" by reference to the fact that a majority of the property surrounding the Hill property

consisted of undeveloped subdivisions. LUBA concluded that such an admitted set of circumstances was insufficient to meet the criteria established by the rule. Presumably, petitioners would have preferred that LUBA rely on certain other arguably relevant facts. They argue that "there was a great deal more testimony (than in a previous annexation proceeding) concerning the *adaptability* of this area for urban uses." (Emphasis supplied.) They also point to evidence that there is an improved street leading to the property and that development of the property would not have a negative impact on nearby agricultural lands. They also refer us to several slides depicting the Hill property and the surrounding area. LUBA's view, however, was that these factors upon which petitioners rely are, under its interpretation of the pre-acknowledgment annexation rule, beside the point. We need not address those additional factors, however, because we conclude that LUBA interpreted its own rule in a reasonable way. That is all that is required. *See, e.g., Duncan v. Law Enforcement Council,* 37 Or App 119, 586 P2d 398 (1978), *rev den* 285 Or 195 (1979). We decline petitioners' invitation to advance our own alternative interpretation of the rule.

LUBA next considered the other possible alternative basis for upholding the annexation—that the property is "clearly and demonstrably needed for an urban use prior to acknowledgment of the appropriate plan." *See* OAR 660-01-315(2)(b). LUBA concluded:

"There is much discussion and many findings in the record regarding the question of need for this property to be developed for residential purposes. Without addressing whether the findings of need are sufficient to meet the annexation test, we note that the city made no finding that the property was needed for residential development 'prior to acknowledgment of the appropriate plan.' There is no finding to indicate when acknowledgment of the city's comprehensive plan is anticipated. Without such consideration, the city is hard pressed to know whether the Hill land is needed for an urban use prior to that acknowledgment. Furthermore, given the fact that there are numerous platted but undeveloped lots in the vicinity of the Hill property, no urgency seems to exist for development of this property."

■    Petitioners argue that there was testimony that a need "presently exists" for additional available buildable lots in the city. The testimony they refer to, by witness Cargill, indicated that there are approximately 229 lots in Pendleton that had been platted since 1970 or later and remain unsold. It indicated that that inventory would be exhausted in 26 months, that "it takes from one to two years to produce finished residential lots in Pendleton" and that "considerable emphasis needs to be placed on planning now for future needs." This testimony indicates that at some time between two months and one year in the future it would be prudent for the city to begin plans for additional residential lots. Petitioners do not dispute LUBA's claim that the record contains no testimony as to when City's comprehensive plan might be ready for acknowledgment. That was a pertinent consideration. LUBA was therefore correct in concluding that City did not make a finding that the property was needed for residential development "prior to acknowledgment of the appropriate plan."

Petitioners argue that a prior LUBA decision, *Friends of Linn County v. Lebanon,* 1 Or LUBA 50 (1980), is directly in point and in their favor. Their argument on this point consists entirely of a verbatim recitation of that decision. We conclude that the decision is not inconsistent with LUBA's decision in the instant case. In that case, LUBA upheld Lebanon's decision to annex 245 acres of land to the city, despite the fact that Lebanon did not have an acknowledged comprehensive plan. LUBA correctly distinguished that opinion as follows:

"* * * In *Friends of Linn County v. Lebanon,* 1 Or LUBA 50, 70 (1980), the City of Lebanon was not fully aware of when it would receive acknowledgment of its comprehensive plan. However, in that case, Lebanon had found, based on substantial evidence, that if it was to insure that Tektronix Corporation would become part of its economic base, it needed to move quickly to annex the property upon which Tektronix would be able to locate. The City of Pendleton in this case has expressed no such urgency and, in fact, the record would not support such a finding if it were made."

We conclude that LUBA's reasonable interpretation of its own rules establishes that City's findings of facts do not support its conclusion that annexation is necessary at this time.

Affirmed.